NOLAN et al. v. COLORADO CENT. CONSOL. MIN. CO.

(Circuit Court of Appeals, Eighth Circuit, October 8, 1894.)

No. 412.

1. WRIT OF ERROR—WHEN LIES — JUDGMENT VACATING AWARD OF ARBITRATORS—BILL OF EXCEPTIONS.
A writ of error will lie in the federal courts to review a judgment setting aside an award of arbitrators made and returned pursuant to a rule or order of court; and a bill of exceptions may be employed to bring upon the record facts that were adduced in the trial court either to support or overthrow exceptions to the award.

2. SAME—EXTENT OF REVIEW—QUESTIONS OF FACT.
The appellate court will not, however, weigh or examine testimony adduced either to sustain or impeach the award, but will confine its rulings to questions of law arising upon the facts shown; and hence, to obtain a review, the ultimate facts must be found, and reported in the bill of exceptions, and merely to report the testimony and affidavits considered below is insufficient.

3. SAME—BILL OF EXCEPTIONS—INTERPRETATION THEREOF.
An exception to an arbitrators' award charged as ground for vacating it that the arbitrators had been unduly prejudiced and biased against the defendant by untrue statements made to them by the plaintiffs' attorney. A bill of exceptions, containing the testimony offered in support of said exception, in its concluding paragraph stated that the court sustained the exception to the award on the sole ground that an attempted revocation of the submission by defendants was improper; that a communication made by the plaintiffs to the arbitrators to the effect that defendants had charged them with misconduct was improperly made; that the subsequent investigation before the court touching the same matter was irregular and improper; and that the taking of affidavits from the arbitrators concerning their conduct in office pending the hearing was also improper,—for all of which the award was set aside. Held, that it did, not appear from the foregoing statements that the court intended to declare as a matter of law that the doing and saying of certain things which it characterized as improper had vitiated the award, without reference to the effect of those acts and utterances upon the minds of the arbitrators, and without reference to their influence upon the fairness of the award; that the statement in question was in the nature of a commentary on certain evidence offered to sustain the exception; that the said statement in the bill of exceptions must be read in connection with the exception to the award which had been tried and determined; that the court evidently intended to say that the charge contained in the exception to the award, or the substance of it, had been proven; and that the bill of exceptions, taken as a whole, simply disclosed a general finding on an issue of fact raised by the exception to the award, which finding could not be reviewed on a writ of error; that the only questions

of law presented by the bill of exceptions were—First, whether the award was one which the court had power to vacate; and, second, whether the charge contained in the exception to the award, if true, was sufficient to justify the court's action in vacating the award.

4. AWARD OF ARBITRATORS—POWER OF COURT TO SET ASIDE—PREJUDICE AND PARTIALITY.

An award made pursuant to a rule of court may be set aside by the court when it is satisfied that by reason of a communication made to the arbitrators, pending the arbitration, by one of the parties, a feeling of hostility to the opposite party has been engendered, rendering one or more members of the board partial and prejudiced and has very likely affected the fairness of the award.

In Error to the Circuit Court of the United States for the District of Colorado.

L. C. Rockwell, for plaintiffs in error.

Charles J. Hughes, Jr., for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This case comes to this court on a writ of error from the circuit court of the United States for the district of Colorado. The primary question for consideration is whether the errors complained of can be reviewed by this court, and a decision of that question involves a statement somewhat in detail of the various orders and proceedings which are disclosed by the record. An action of trespass was begun in the circuit court of the United States for the district of Colorado by James H. Nolan, Stephen W. Kearney, and Lewis Rockwell, the plaintiffs in error, against the Colorado Central Consolidated Mining Company, the defendant in error, to recover damages in the sum of $100,000 for entering into a mine, which was alleged to be the property of the plaintiffs, and for taking and removing therefrom a large quantity of gold, silver, and lead bearing ore. An answer was filed to the complaint, setting up various defenses, which it is unnecessary to state, and to such answer a replication was filed. Subsequently the parties to the suit filed a written agreement to submit the case to three arbitrators, and thereupon an order of court was made and entered of record, to the effect that the case be referred to Mike P. O'Donnell, Thomas Cornish, and Joseph W. Watson, "as arbitrators, * * * to determine the facts and law in pursuance of the terms, clauses, and conditions of said agreement to arbitrate, and to make their award in writing to this court with all convenient speed." The bill of exceptions discloses that, after the hearing before the arbitrators had been in progress for some time, the attorneys for the respective parties had a private interview with respect to a report, which had come to the knowledge of the defendant company, that two persons by the name of William A. Duff and Frederick S. Johnson had been, and then were, improperly influencing the action of the arbitrators to the detriment of the defendant company. Some correspondence also passed between the attorneys of the respective parties on the same subject after their personal interview. This correspondence appears to have been privately shown to one of the arbitrators, Mr. Joseph W. Watson, who was a partner of William A. Duff, and

who was particularly affected by the report that Duff and Johnson were exercising an improper influence over the board of arbitrators. At the same time that the correspondence was shown to Watson, certain oral statements appear to have been made to him by the plaintiffs' attorney, concerning the nature of the charges that had been made against him. On the hearing of the exceptions to the award, the arbitrator testified, in substance, that he was told by the plaintiffs' attorney, at this interview, that the defendant company, through its counsel, had alleged or charged that "something was going on crooked in reference to the arbitration, and that Duff and Johnson had been accused of bribing him [Watson] and interfering with his straight action," etc. The plaintiffs' attorney, who made the communication in question to the arbitrator, also admitted in his testimony that he knew when he made the communication that it would naturally make the arbitrator unfriendly to the defendant, and that he did not care how unfriendly it made him. Immediately following these occurrences, the defendant company made an effort to revoke the arbitration agreement by serving a formal notice of revocation upon the several members of the board of arbitrators. At the same time the plaintiffs made a formal application to the circuit court for an investigation of the charge of misconduct on the part of Messrs. Duff and Johnson with relation to the board of arbitrators. This latter application for an investigation appears to have been supported by an affidavit of the plaintiffs' attorney, and also by affidavits procured by him from two of the arbitrators, to wit, Messrs. Watson and O'Donnell, which latter affidavits tended to show that the charge of misconduct was groundless. On the hearing of the application to investigate the aforesaid charges, the circuit court appears to have been made acquainted · with the effort of the defendant to revoke the arbitration agreement, and to have entered upon an inquiry as to whether the agreement of arbitration could be revoked; whereupon it entered the following order, to wit:

"The court, being sufficiently advised in the premises, doth rule and decide that such right [of revocation] does not exist, and that the defendant's attempted revocation was of non-effect. The court doth decline to enter any order for an investigation of the matters set forth in the said affidavit, but does order and adjudge that said arbitrators, to wit, Joseph W. Watson, Mike P. O'Donnell, and Thomas Cornish, proceed with the hearing and investigation of the matter referred to them in this cause, in and by an order entered in this action on the fifth day of December, A. D. 1892."

Following the entry of the foregoing order, and before any proceedings were taken by the arbitrators, the defendant company filed a formal motion in the circuit court to vacate and set aside the order referring the cause to a board of arbitrators, which motion was forthwith denied by the circuit court. With reference to the grounds of the last-mentioned motion, it is sufficient for the present purposes to say that the defendant alleged—First, that the agreement of arbitration had been legally revoked; second, that Arbitrator Mike O'Donnell was prejudiced and biased against the defendant at the time of his appointment, and that such fact was un-

known to the defendant at the date of his appointment; third, that the board of arbitrators, and particularly said Watson, had been greatly prejudiced and biased against the defendant by a statement which had been communicated to him and to the board by the plaintiffs' attorney, pending the arbitration, which statement was, in effect, that the defendant had directly charged that William A. Duff had bribed one of the arbitrators, to wit, Joseph W. Watson. Shortly after the foregoing proceedings, the arbitrators filed their award in the circuit court, wherein they recommended the entry of a judgment against the defendant in the sum of $72,549.30. It should be noted in this connection that the agreement of arbitration provided, in substance, that the findings of the arbitrators upon questions of fact should be deemed conclusive, but that the court to whom the award was returned might review the conclusions of the board on matters of law. In conformity with the agreement of arbitration, the award of the arbitrators contained in separate paragraphs a report of their findings upon questions of fact and their conclusions upon matters of law. To the aforesaid award the defendant filed numerous objections and exceptions. It is unnecessary to state the nature of said exceptions further than to say that, among other things, the defendant alleged that the award ought to be set aside for that, pending the arbitration, Joseph W. Watson, one of the arbitrators, had been prejudiced and biased against the defendant by an untrue statement made by the plaintiffs' attorney to said Watson and to the other arbitrators, which statement was, in effect, that the defendant had openly charged that said Watson had been bribed by one William A. Duff; furthermore, that the award was the result of prejudice and passion on the part of said Watson and O'Donnell, which had been induced by the untrue statement aforesaid made by the plaintiffs' attorney to said board of arbitrators with reference to the charge of bribery. The circuit court thereafter sent the exceptions to a master to take and report the testimony in support of that portion of the exceptions which alleged that the arbitrators had become biased and prejudiced against the defendant by the untrue statements made and communicated to them by the plaintiffs' attorney, and a large amount of testimony was taken on this subject, which has been incorporated into the record. The bill of exceptions, from which we have extracted all of the foregoing facts, concludes with the following statement, to wit:

"Upon the coming in of the report of the master, objections and exceptions of the defendant to the award were heard and sustained by the court, on the sole ground that the attempted revocation by defendant of the submission on January 5, 1893, was improper, and that the communication to the arbitrators on January 5, 1893, by one of the plaintiffs and their counsel, as to charges of misconduct on the part of the arbitrators, was improperly made, and that the subsequent investigation in court touching the same matter was also irregular and improper; that taking affidavits from the arbitrators concerning their conduct in office pending the hearing was also improper,—for all of which the award should be vacated and set aside; and this was accordingly done; to which ruling of the court, plaintiffs, by their counsel, then and there excepted. That the court, at the time these objections and exceptions were sustained, dismissed plaintiffs' action."

Counsel for the defendant in error concedes that so much of the foregoing order as directed a dismissal of the plaintiffs' action was erroneous, and he also consents that the judgment of dismissal may be reversed, and the case remanded for further proceedings. He contends, however, that the action of the circuit court in vacating the award was a proper order on the case made by the evidence, or, if it was not a proper order, that the court's action in that behalf was discretionary, and that it cannot be reviewed by this court. In this respect it is said that the action of the trial court was tantamount to granting a new trial for misbehavior of the jury, and the rule of practice is invoked that error cannot be assigned either for granting or denying a motion for a new trial. On the other hand, counsel for the plaintiffs is not content with an order reversing the judgment of dismissal. His contention is that the record discloses a clear error of law in that part of the order which vacated the award. He accordingly insists that the judgment of this court should annul that order, as well as the judgment dismissing the suit, and that it should re-establish the award.

Undoubtedly, the doctrine is well established in the federal courts that the granting of a motion for a new trial for any of the causes usually assigned in such motions is purely discretionary, and that an order of that nature is not reviewable on writ of error. Freeborn v. Smith, 2 Wall. 160, 176; Insurance Co. v. Barton, 13 Wall. 603; Railroad Co. v. Howard, 4 U. S. App. 202, 1 C. C. A. 229, and 49 Fed. 206, and cases there cited. But we are not prepared to admit that an order vacating an award on account of the prejudice or misbehavior of an arbitrator is in all respects analogous to an order granting a new trial; nor is it necessary in the present case to decide, and we do not decide, whether, in view of the charges preferred against one of the parties to the suit and the arbitrators, it rested in the sound discretion of the circuit court to vacate the award the same as if it had been the verdict of a jury. As this case was not tried before a jury, according to the course of the common law, nor before the court on a written stipulation waiving a jury, pursuant to section 649 of the Revised Statutes, we at first entertained some doubt whether the case could be reviewed here on a writ of error, and particularly whether a bill of exceptions could properly be employed to bring upon the record affidavits and other testimony taken before a master, which was taken merely to aid the trial court in passing upon an exception to an award. These doubts were induced by the remarks of Mr. Chief Justice Waite in Boogher v. Insurance Co., 103 U. S. 95, and by the decision in Campbell v. Boyreau, 21 How. 223. The practice, however, of allowing a writ of error to review a judgment founded upon an award of arbitrators, which has been made and returned pursuant to a rule or order of court, seems to have been approved in the following cases: Thornton v. Carson, 7 Cranch 597; Canal Co. v. Swann, 5 How. 83, 86; Railroad Co. v. Myers, 18 How. 246, 251, 252; and Heckers v. Fowler, 2 Wall. 123. We must accept these authorities as furnishing a sufficient precedent to support the writ of error in the case at bar. The case of Railroad Co. v. Myers, 18 How.

251, 252, is also a direct authority in support of the further proposition that a bill of exceptions may be employed to bring upon the record facts that were adduced in the trial court either to support or overthrow exceptions taken to an arbitrator's award.   But, while the law is as last stated, it must not be inferred that it is any part of the duty of a federal appellate court to weigh or examine testimony that is offered either to sustain or impeach an award, or to sustain a motion of any other character that may have been made during the progress of a case.   It is no more the duty of an appellate court to settle disputed questions of fact arising on the hearing of exceptions to an award than it is to settle questions of fact when they arise on an ordinary trial either before a court or a jury. It is the province of this court to decide questions of law only when they are fairly presented by the record; and, to raise an issue of law founded upon matter of fact, the ultimate conclusion of fact on which the question of law arises must be found and stated in the bill of exceptions.   It will not do to merely report the testimony, or even the substance of the testimony, from which the ultimate fact must be deduced.   In the case of Railroad Co. v. Myers, supra, Mr. Justice Campbell, while holding that a bill of exceptions could be used to bring facts upon the record to sustain exceptions to an award, was very careful to say:

"But, to present a question to this court, the subordinate tribunal must ascertain the facts upon which the judgment or order excepted to is founded; for this court cannot determine the weight or effect of evidence, nor decide mixed questions of law and fact."

See, also, the remarks made to the same effect in Burr v. Des Moines Co., 1 Wall. 99, 102.

Premising this much, we turn to consider whether the bill of exceptions in the case at bar finds or reports any fact, or state of facts, or contains any declaration of law, which will enable us to say that the circuit court erred in vacating the award.   As we have before remarked, it contains certain affidavits and the testimony of several witnesses, which appear to have been considered by the trial court when the exceptions to the award were heard and determined; but we find nothing in the bill that is tantamount to a special finding of ultimate facts, such as will suffice to raise a question of law for our determination.   It is true that the bill of exceptions concludes with a statement, above quoted, which shows that the circuit court based its action in vacating the award on the testimony that was offered in support of those objections to the award, which alleged that the arbitrators had been unduly prejudiced against the defendant by untrue statements communicated to them as to charges of corruption that had been made by the defendant company.   It is also true that the trial court considered that certain things which had been done and said were improper, but we are forced to regard these latter statements as being in the nature of a commentary on certain evidence that had been offered to sustain the exceptions.

It does not appear, we think, that the court intended to declare, as a matter of law, that the doing or saying of certain things, which it characterized as improper, had vitiated the award, without regard to the effect of those acts and utterances upon the minds of the arbitrators and without reference to their influence upon the character and fairness of the award. The concluding part of the bill must be read in connection with the exceptions which had been tried and determined. It is certainly a reasonable presumption that the trial court intended to make a finding which was responsive to the issues. Now, the charge contained in the exceptions on which the court based its action was in substance, as heretofore stated, that the arbitrators had been biased and prejudiced against the defendant by untrue statements made to them pending the arbitration by the plaintiffs' attorney, and that the award was induced by such prejudice, or at least that the statements made had affected the result. The court evidently intended to say that this charge, or the substance of it, had been proven, and that, for that reason, the exceptions had been sustained and the award vacated. In short, we think that the bill of exceptions discloses no more than a general finding on questions of fact raised by the exceptions, and we must accept that finding as conclusive. There can be no doubt, we think, that there was evidence before the court tending to support the court's conclusion on the aforesaid issue, and it is not our province to decide as to the weight that should have been given to such testimony. It results from the foregoing view of the case, which we have felt constrained to take, that the only questions arising upon this record for our consideration are—First, whether the circuit court had power to vacate the award; and, second, whether the exceptions to the award stated facts which were sufficient, if true, to justify the court's action. We do not understand that the plaintiffs in error have contended that either of these questions should be decided in the negative. It is clear, we think, that, inasmuch as the award was made pursuant to a rule of court, the court had power to vacate it, on motion, for cause shown; and with respect to the other question we think it is quite clear that the exceptions contained a statement of sufficient grounds to warrant the court's action; that is to say, we think that an award may be set aside where the trial court is satisfied that by reason of a communication made to one or more of the arbitrators, pending the arbitration, by one of the parties to the controversy, a feeling of hostility to the opposite party has been engendered, which has rendered one or more members of the board partial and prejudiced, and has very likely affected the fairness of the award. Such was the nature of the charge contained in the present exceptions to the report, which the court has sustained, upon the ground, no doubt, that it was well founded in point of fact. In support of the latter proposition, we refer to Strong v. Strong, 9 Cush. 560; Tomlin v. Cox, 19 N. J. Law, 76; Cleland v. Hedly, 5 R. I. 163; Fox v. Hazelton, 10 Pick. 275; Morse, Arb. pp. 106–108, 533, 534.

The order of the circuit court vacating the award will not be

disturbed, but the judgment dismissing the plaintiffs' suit is reversed, without the allowance of costs to either party, and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.