**Randall W. COFFMAN and Wife, Donna Jo Coffman Plaintiffs-Appellees,**

v.

**POOLE TRUCK LINE, INC. Defendant-Appellant.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Feb. 14, 1991.

Permission to Appeal Denied by Supreme Court June 10, 1991.

K. Stephen Powers, Chattanooga, for defendant-appellant.

Graham Swafford, Jasper, for plaintiffs-appellees.

## OPINION

WILLIAM H. INMAN, Special Judge.

There are two issues for review in this tort action. One issue involves asserted

unethical conduct by the attorney for the plaintiff, while the other involves the alleged excessiveness of the verdict.

The plaintiff Randall Coffman alleged that he was parked in a rest area provided for travelers on Interstate 40 when the truck owned by Poole Truck Line, Inc. and driven by its agent and employee Bernard McFaddin, "slammed into him from the rear", causing much property damage and extensive personal injury.

Poole Truck Line, Inc. filed a separate answer, alleging (1) that "the complaint fails to state a claim against this defendant upon which any relief can be granted" [1]; (2) that Bernard McFaddin was its employee at the time of the accident and was driving "the truck with this defendant's permission"; (3) that Coffman was not injured to the extent claimed.

McFaddin, "by special appearance through his counsel" [2] moved to dismiss the complaint or to quash the service of the summons and complaint because he had not been personally served with process. Before this motion was acted upon, the plaintiffs voluntarily dismissed their action against McFaddin, and the case proceeded against Poole Truck Line, Inc.

Eight days before the case was scheduled for trial, counsel for the appellant filed a motion to disqualify plaintiff's counsel for alleged unethical conduct, in that he violated DR 7–104(A)(1) of Rule 8 of the Supreme Court, by interviewing and taking a recorded statement from McFaddin on August 20, 1988, which he revealed one month later.[3]

Because the matter had been reported to the Board of Professional Responsibility,

the trial judge declined to interfere and overruled the motion to disqualify. McFaddin did not testify. The jury returned a verdict in the amount of $255,000.00 for Randall Coffman, and $5,000.00 for his wife.

Poole filed a motion for a new trial, complaining of the failure of the Court to disqualify counsel for the appellee, and of the excessiveness of the verdict. In support of its motion, there was appended the affidavits of counsel for the appellant, viz., K. Stephen Powers and J. Polk Cooley, the affidavit of Richard L. Hollow, attorney for McFaddin,[4] and of Richard Jenkins, an officer of Poole Truck Line, Inc., the statement of McFaddin, and copies of letters passing between the Board of Professional Responsibility and Graham Swafford, counsel for the appellee.

Mr. Swafford admits that he journeyed to South Carolina, without notice to Mr. Powers, and took a recorded statement from the defendant McFaddin, whom he insists was only a nominal defendant, and that he had been advised that owing to lack of process on McFaddin Mr. Powers had stated that his defense would be limited to Poole. In any event, the statement obtained from McFaddin was highly damaging to him and his employer; as stated by Mr. Cooley,

"I reviewed the signed statement obtained from Mr. McFaddin by Mr. Swafford at a time when Mr. McFaddin was a named defendant in the lawsuit and was represented by counsel who was not present at that time. The statement, if true, contained critical admissions that

---

1. A frivolous assertion, and violative of Rule 11, Rules of Civil Procedure. In view of the strong allegations of the complaint, it cannot be argued that the defense of failure to state a claim is "well grounded in fact and warranted by existing law".

2. Who represented McFaddin's employer, Poole Truck Line, Inc. This motion was filed August 12, 1988. The order dismissing McFaddin was entered on September 28, 1988.

3. Appellant's counsel made a "telephone motion" to disqualify the attorney for the plaintiff

about one year previously. The written motion was filed apparently at the behest of the trial judge since the Rules of Civil Procedure do not contemplate oral motions.

4. Who was employed by Poole to represent McFaddin following the withdrawal of Powers after the episode of the statement, which resulted in Board-imposed discipline upon counsel for the appellee.

would be highly critical to the defense proof.

Motion has been filed by defendants seeking to remove this prejudicial statement from plaintiff's counsel's file, but was denied.

If McFaddin had testified he would have stated that the area of the accident scene was foggy when he pulled into the rest stop, that the Coffman truck did not have any lights marking its presence and that other vehicles were present in the rest area which impaired his ability to observe the Coffman truck. With this evidence we felt we could support contributory negligence and sudden emergency.

However, by putting this witness on the stand, either in person or by deposition, the plaintiffs would most surely have introduced the written statement which was improperly taken from him and which would have been highly prejudicial to our case.

Without McFaddin's testimony, we could not ask for charges on contributory negligence and sudden emergency. Thus, without McFaddin's testimony, the defendant was denied a fair trial."

Counsel for the appellee argues that the affidavits appended to the motion for a new trial are outside the record[5] because they "do not constitute a properly preserved and perfected record for appeal", and "the testimony of witnesses shall be taken under oath and in open Court". We are not certain of the thrust of this argument; suffice to say that a motion for a new trial may be based on affidavits, *Rule 59.03*, Rules of Civil Procedure; *Seay v. Knoxville*, 654 S.W.2d 397 (Tenn.Ct.App. 1983). We especially take note that these affidavits were not controverted.

Counsel also insists that "even if the inadvertent interview of a non-administrative corporate employee could be construed

as improper, does a separate defendant have standing to raise this issue?"

■ In the first place, we do not look upon the interview as "inadvertent". Mr. Swafford admittedly ascertained the address of McFaddin in South Carolina and drove there to interview him. He took a recorded statement from McFaddin, whom he had sued on behalf of Coffman. He resisted efforts to expunge his file of this statement. Mr. Swafford's characterization of his activities as "inadvertent" is sorely deficient. We are not singularly impressed with the argument that only McFaddin had standing to question the tactics employed, to the exclusion of a "separate defendant", because it was the "separate defendant", not McFaddin, who bore the weight of the judgment. The fact that Swafford intended to non-suit McFaddin is of no relevance that we can see; this trial ploy in no way excuses Swafford from abiding the clear mandate of Rule 8, *Rules of the Supreme Court.* He obtained an unfair advantage by "neutralizing" McFaddin and thereby detracted prima facie from the justice of the case.

■ It may well be that had not McFaddin been effectively neutralized, that had he testified, his testimony would not have been helpful to Poole. But this argument begs the question; it has no bearing on the conflict of interest which preceded it. McFaddin was a named defendant who was accused of acts, that if true, would amount to gross negligence; he was presumably an additional insured; he was Swafford's adversary, and it was improper for Swafford to unilaterally interview him.

The trial judge observed that while he did not in any manner condone the action of counsel, he was unable to see how the defendant was prejudiced, and accordingly denied a new trial.

■ The malfeasance of his attorney ought not to be visited upon the litigant

---

5. Both counsel repeatedly strayed outside the record during oral argument. Mr. Swafford argued that even though McFaddin was an ad-

verse party, he was not then represented, and therefore the interview was proper.

unless it reasonably appears that prejudice resulted to another party. In the absence of a showing of prejudice, we think that a discipline imposed by the Board is sufficiently corrective. But the effect of prejudice is difficult to quantify; even absent the mandated prohibition of DR 7–104(A)(1) the conduct of appellant's counsel violated the traditional concepts of professionalism and basic fairness. There can be no doubt that McFaddin was rendered to be his own enemy, or, as the appellant argues, was completely neutralized; the statements he made during the interview were greatly against interest, as opposed to his discovery testimony. Perhaps he was merely being agreeable with adroit questioning; perhaps he was truthful; we do not know. But if his testimony about weather conditions and the absence of lights on the parked truck, inter alia, had been available to the jury the result conceivably might have been different, given the fact that the verdict was admittedly generous.[6] From our review of this record we cannot find that the defendant was not prejudiced by the described conduct of counsel for the appellee, and we cannot find that the appellant waived the effect of such conduct by delaying the filing of a proper motion for more than one year. To do so would lend judicial absolution to attorney misconduct.

This record does not reveal the reason why lead counsel for the appellant delayed the filing of the motion until eight days prior to trial. In differing circumstances we would with alacrity hold that the motion should be stricken, or that appellant's leading counsel had by his inaction waived or condoned the actions of appellee's counsel. But in our view unethical conduct may never be juridically overlooked or condoned, whether pretextually or procedurally. This principle is paramount to any consideration of expediency. It is, at the least, certain that counsel who engages himself in such conduct must never enjoy the fruits of it.

We are left with the clear impression that the written motion to disqualify was filed only after counsel was unable to settle the case. If this is correct, the matter is compounded, because the issue of unethical conduct may not be treated as a tactical one whereby the proverbial table is turned to unexpected and perhaps undeserved advantage.

Disqualification is a drastic action, and one that we are reluctant to take unless it is imperatively required.[7] In this case a practical alternative exists. Upon retrial the statements made by McFaddin to counsel for the appellee will not be alluded to in any manner, and all transcripts of the interview will be expunged. In short, counsel will not use these statements in any way. Having said all this, we need not discuss the remaining issue. The judgment is reversed and the case is remanded for a new trial, with costs assessed to the appellee.

GODDARD, J., concurs.

FRANKS, J., dissents.

FRANKS, Judge, dissenting.

The trial judge refused to disqualify plaintiffs' counsel on defendant's motion. The majority refuses to disqualify plaintiffs' counsel on the basis of the same motion yet grants a new trial. I dissent.

The majority observes: "From our review of this record we cannot find that the defendant was not prejudiced by the described conduct of counsel for the appellee...." The record referred to is one devoid of any testimony by McFaddin at the trial. Apparently, he was available to testify but counsel elected not to call McFaddin as a witness. If we commence reversing cases on "what might have been", it will be difficult to conclude any litigation. In order to reverse on the evi-

---

**6.** Mr. Coffman's medical expenses were less than $5,000.00, and the nature and extent of his ligaments injuries, insofar as this record reveals, are somewhat nebulous.

**7.** See, *King v. King*, Ct. of Appeals, Nashville, App. No. 89–46–11 (1989).

dence or lack thereof, the evidentiary record at trial must establish the error. *McCool v. United States*, 263 F. 55 (6th Cir.1920); *State v. Goad*, 707 S.W.2d 846 (Tenn.1986); *Strader v. State*, 208 Tenn. 192, 344 S.W.2d 546 (1961).

The majority's statement that the affidavits of counsel state that counsel's conduct prejudiced defendants begs the question. The issue is whether the evidentiary trial record establishes such prejudice. I agree with the trial judge that it does not. The affidavits in the record purporting to predict what would result if a witness were called to testify are highly improper and should not be considered.

I would not reverse on the grounds set forth in the majority opinion.